IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22 CV 6383 |
| | ) | |
| EDDIE C. HICKS, | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Eddie C. Hicks, *pro se*, has filed a motion (CVR. 2)[1] under 28 U.S.C. § 2255(a) to vacate, set aside, or correct his sentence.[2] Hicks was convicted by a jury of one count of conspiracy to commit racketeering, in violation of 18 U.S.C. § 1962(d); two counts of conspiracy and attempt to possess and distribute 500 grams or more of mixtures containing cocaine or marijuana, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846; one count of conspiracy to commit robbery and extortion, in violation of 18 U.S.C. §§ 2 and 1951; one count of possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c); two counts of stealing and converting monies of the United States in excess of $1,000, in violation of 18 U.S.C. §§ 2 and 641; and one count of knowingly and willfully failing to appear before a

---

[1] References to the record in Hicks's criminal case, No. 01 CR 101-1, are to "R," followed by the applicable docket item number. References to the record in Hicks's Section 2255 case are to "CVR," followed by the applicable docket item number.

[2] Hicks has not actually filed a "motion" in this case. Rather, on September 28, 2022, Hicks filed with this court a "Memorandum of Law in support of His Application/Motion." (CVR. 2.) The first docket entry (CVR. 1), though labeled as a motion "to Vacate, Set Aside or Correct Sentence (2255)," is actually a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) that Hicks filed that same day. Because "[a] document filed *pro se* is 'to be liberally construed,'" *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976)), the court construes Hicks's memorandum of law as a motion under 28 U.S.C. § 2255.

court, in violation of 18 U.S.C. §§ 3146(a)(1) and (b)(1). (Rs. 232 and 317.) On October 6, 2020, the court sentenced Hicks to a term of 156 months imprisonment—60 months as to the firearm count and 96 months as to all other counts, to run consecutively—and to a term of supervised release of 4 years. (R. 392.) Hicks appealed his convictions on three counts—one for racketeering and two for stealing money belonging to the United States—and the Court of Appeals affirmed his convictions and sentence. *United States* v. *Hicks*, 15 F.4th 814, 815–16, 818 (7th Cir. 2021). Hicks now moves for federal habeas relief under Section 2255, presenting seven grounds for concluding that that his trial counsel was ineffective. For the reasons discussed below, the motion is denied.

## BACKGROUND

I. **General Factual Background** [3]

Defendant Eddie C. Hicks worked as a Chicago police officer for about three decades. (R. 232 at 1.) From the early 1990's until February 2001, Hicks and his co-defendants[4] conspired "to obtain cash, controlled substances, and property through robberies, extortions, and thefts from individuals whom they believed to be engaged in narcotics trafficking." (*Id.* at 2–3.) Using unmarked Chicago Police Department (CPD) cars, fabricated search warrants, and counterfeit CPD badges, Hicks and his crew conducted illegal traffic stops and illegal property searches of suspected drug dealers, robbing them of their drugs, cash, and other property. (*Id.* at 4–7.) Seized

---

[3] Hicks has not provided a factual background of the case, focusing instead on only those facts that might support his ineffective assistance of counsel claim. (CVR. 2.) As the court provides this general factual background only for the reader's ease, the facts are drawn solely from the superseding indictment. (R. 232.).

[4] Hicks's co-defendants were Matthew L. Moran, Lawrence W. Knitter, Larry Hargrove, and Albert M. Fontana. (R. 35.)

drugs, including cocaine and marijuana, were often sold and the proceeds divided up among the members of the crew. (*Id.* at 12–13.)

## II. Indictments

In 2001, Hicks was indicted along with his co-defendants on multiple charges stemming from these acts. (R. 35.) But while Hicks's co-defendants faced those charges and went to prison,[5] Hicks failed to appear at his 2003 trial. (R. 83.) Instead, he disappeared. More than 14 years later, in the fall of 2017, Hicks was found and arrested in Detroit, Michigan. Shortly thereafter, a special grand jury returned a nine-count superseding indictment against Hicks. (R. 232.) In addition to the counts Hicks had faced when he was originally indicted in 2001, Hicks was charged with failing to appear for his 2003 trial in violation of 18 U.S.C. §§ 3146(a)(1) and (b)(1). (*Id.* at 20.) The superseding indictment (*id.*) charged Hicks with nine offenses:

Count I: racketeering conspiracy in violation of 18 U.S.C. § 1962(d);
Count II: conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2;
Count III: attempt to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2;
Count IV: conspiracy to commit robbery and extortion in violation of 18 U.S.C. §§ 2 and 1951;
Count V: possession of a firearm in furtherance of a crime of violence (Count IV) in violation of 18 U.S.C. § 924(c)(1)(A);
Count VI: possession of a firearm in furtherance of a drug-trafficking crime (Count II) in violation of 18 U.S.C. § 924(c)(1)(A);
Count VII: theft and conversion of more than $1,000 belonging to the United States in violation of 18 U.S.C. §§ 2 and 641;
Count VIII: theft and conversion of more than $1,000 belonging to the United States in violation of 18 U.S.C. §§ 2 and 641; and

---

[5] Co-defendants Matthew L. Moran and Lawrence W. Knitter pleaded guilty to racketeering conspiracy, 18 U.S.C. § 1962(d), and were sentenced to terms of imprisonment of 94 months (Moran, No. 01 CR 101-2) and 112 months (Knitter, No. 01 CR 101-3). Co-defendant Larry Hargrove was found guilty by a jury on four counts and was sentenced to a term of imprisonment of 216 months. (No. 01 CR 101-4.) Hargrove's conviction was affirmed on appeal. *United States* v. *Hargrove*, 508 F.3d 445 (7th Cir. 2007). Co-defendant Albert M. Fontana pleaded guilty to unlawful transport of firearms, 18 U.S.C. § 922(g)(1), and was sentenced to a term of imprisonment of 44 months. (No. 01 CR 101-5.)

      Count IX:    failure to appear before a court in violation of 18 U.S.C. §§ 3146(a)(1) and (b)(1).

## III. Pre-Trial Motions [6]

### A. Prospective Witness Contact Information

In March 2018, Hicks moved the court to order "the government to provide on an ongoing basis the contact information for all of the prospective witnesses the government [had] interviewed." (R. 241 at 1.) Hicks set forth three reasons why such an order was necessary: (1) "the most important government witnesses at trial" would be Hicks's co-defendants, who "would have first person knowledge of the events alleged" in the superseding indictment; (2) "it would be helpful to determine the attitude" of those co-defendants toward "Hicks and testifying for the government" since the government had "little leverage over them" (as they had all received and served substantial sentences) and they could be resentful toward Hicks, the government, or both; and (3) given the length of time (17 years) between the alleged criminal activity and Hicks's trial, it "would be helpful to know in advance how detailed [the co-defendants'] memory of [those] events" was. (*Id.* at 1–2.)

After full briefing (R. 249, 250), the court denied the motion without prejudice, allowing defense counsel to communicate with the four co-defendants "by writing a letter to each requesting an opportunity to speak with them and providing contact information, placing the letters in sealed envelopes, [and] delivering the letters to the assigned United States Attorney," who would ensure that the letters were delivered to the co-defendants. (R. 252.) The court later modified the order to allow defense counsel to deliver those letters directly to co-defendants Moran and Knitter's counsel. (R. 254.)

---

[6] Unless otherwise noted, Hicks's pre-trial motions were made by and through trial counsel.

4

### B. Defense Investigator

Also in March 2018, Hicks moved the court to appoint former FBI agent Stephen Carter as a defense investigator "to assist the defense in trial preparation and at trial." (R. 245 at 1.) Specifically, Hicks argued that the case was "sufficiently complex to warrant [the] appointment" of Carter "to assist with interviewing witnesses, organizing trial exhibits and related materials, and in developing cross-examinations of the government's witnesses." (*Id.*) The court granted the motion. (R. 252.)

### C. Dismissal of Count V

In August 2018, Hicks moved to dismiss Count V of the superseding indictment, conspiracy to commit robbery and extortion in violation of 18 U.S.C. §§ 2 and 1951. (R. 259.) Hicks argued that, as stated in the superseding indictment (R. 232), Count V improperly relied on a "*conspiracy* to commit robbery" to satisfy Section 924(c)(1)(A)'s "crime of violence" element. (*Id.*) After full briefing (R. 261, 265) and in light of this court's decision in *Hargrove* v. *United States*, No. 16 C 7086, 2017 WL 4150718, at *3 (N.D. Ill. Sept. 19, 2017) (holding that Hobbs Act conspiracy is not a "crime of violence" under 18 U.S.C. § 924(c)(3)(A)), and the Seventh Circuit's decision in *United States* v. *Cardena*, 842 F.3d 959, 995–96 (7th Cir. 2016) (holding Section 924(c)(3)'s residual clause unconstitutionally vague), *cert. denied*, 138 S. Ct. 247 (2017)), the court granted Hicks's motion and dismissed Count V.[7] (R. 271.)

---

[7] Before trial, the government filed motions in limine, seeking (1) to admit audio and video recordings of conversations between Hicks, co-defendant Matthew Moran, and cooperating witness Arthur Veal, (2) to recall government agents as witnesses, (3) to require advance notice of Rule 608(b) material, and (4) to exclude evidence of Hicks's prior good acts (R. 282.) The government also filed a motion to admit evidence under Rule 801(d)(2)(E). (R. 283.) Hicks did not oppose these motions, and the court granted them. (R. 290.)

5

IV.     Trial

Hicks's trial was held between March 5 and March 11, 2019. (Rs. 304–05, 312–13.) On the third day of the trial, despite being represented by appointed counsel, Hicks filed a flurry of *pro se* motions. (Rs. 306–11.) Hicks moved (1) to dismiss the indictment (R. 306), (2) for an independent chemical analysis of controlled substances (R. 307), (3) to dismiss for lack of jurisdiction (R. 308), (4) to suppress in- and out-of-court identifications (R. 309), and (5) to suppress wire and video surveillance (R. 311). On March 11, jury deliberations began. (R. 313.) That same day, the jury returned guilty verdicts on all counts, as well as special verdicts on Counts II and II. (*Id.*; R. 317.) Two days later, the court denied all of Hicks's *pro se* motions as (1) inappropriate given Hicks's representation, (2) untimely, and (3) meritless. (R. 318.)

V.      Post-Trial Motions

  A.  Motion for Judgment of Acquittal or a New Trial

On April 9, 2019, Hicks, *pro se*, moved for judgment of acquittal or, in the alternative, a new trial. (R. 323.) After an attorney from the Federal Defender Program was appointed to represent Hicks (R. 327), the court set a new briefing schedule on the motion. (R. 341.) Hicks, by counsel, then filed a new motion for judgment of acquittal or, in the alternative, a new trial. (R. 344.) In that motion, Hicks presented three arguments. First, Hicks argued that the evidence did not support a finding of the "actual presence of any drugs" or use of a firearm in furtherance of a drug-trafficking offense. (*Id.* at 1–2.) Second, Hicks argued that the indictment was defective in that Count I "did not charge a valid enterprise and impermissibly conflated the RICO enterprise, the RICO defendants, the RICO conspiracy, and the RICO pattern of predicate acts." (*Id.* at 3.) Finally, Hicks argued that a jury instruction relating to Counts VII and VIII was erroneous. (*Id.*

6

at 6.) Specifically, Hicks took issue with the instruction that "It is not necessary for the government to prove that the defendant knew that the government owned the money." (*Id.*)

After thorough briefing by the parties, the court denied the motion. (R. 351.) First, after surveying the evidence adduced at trial, the court concluded that there was simply "no serious question as to whether [the] evidence was sufficient" to support the convictions. (*Id.* at 2.) Second, Hicks's challenge to the sufficiency of the superseding indictment was forfeited under Federal Rule of Criminal Procedure (12)(b)(3) (requiring challenge to purported defect in indictment be made before trial), and Hicks had made no attempt to overcome forfeiture with a showing of good cause. (*Id.*) Finally, not only did Hicks fail to challenge the jury instruction on Counts VII and VIII before they were given, the Courts of Appeals, including the Seventh Circuit, had unanimously held that a defendant under 18 U.S.C. § 641 need not have known that the United States owned the property that the defendant stole and converted. (*Id.* at 2–3 (citing *United States* v. *Smith*, 489 F.2d 1330, 1333 (7th Cir. 1973)).

### B. Motion for Reconsideration

Hicks moved for reconsideration (R. 353), arguing that he had not meant to challenge the indictment in his prior motion, but only the jury instructions and closing arguments. (*Id.* at 1.) Although the court found this to be "an unsupportable contention given that [the] original motion stated" that Hicks was "'not challenging the jury instructions'" (R. 355 at 1 (quoting R. 344 at 5)), the court nonetheless considered, and rejected, his new argument (*id.* at 1–2.) The motion for reconsideration was therefore denied.[8] (*Id.* at 2.)

---

[8] Acting *pro se*—even though he had counsel—Hicks then filed a notice of appeal (R. 359) of the court's denial of his motion for a new trial, as well as a motion to stay sentencing (R. 357) and a motion to stay judgment and sentencing (R. 358) pending the resolution of that appeal. The court struck both motions as Hicks was not authorized to file *pro se* motions. (R. 363.) Noting that criminal defendants may not take appeals until both a judgment of conviction and a sentence have been entered, the Court of Appeals dismissed Hicks's appeal for want of jurisdiction. (R. 370.)

**VI.     Sentencing**

On October 1, 2020, the court held Hicks's sentencing hearing. (R. 391.) After considering sentencing memoranda presented by Hicks (R. 384) and the government (Rs. 378 and 385), as well as the probation office's pre-sentencing investigation report (R. 337) and letters in support of Hicks (Rs. 386 and 387), the court sentenced Hicks to a below-guidelines term of imprisonment of 96 months on Counts I (racketeering conspiracy), II (narcotics conspiracy), III (narcotics attempt), IV (robbery and extortion conspiracy), VII (theft and conversion of United States property), VIII (same), and IX (failure to appear) and a consecutive 60-month term of imprisonment on Count VI (firearm possession in drug trafficking). (R. 392.)

**VII.    Direct Appeal**

Hicks appealed his convictions, and the Seventh Circuit affirmed. *United States* v. *Hicks*, 15 F.4th 814 (7th Cir. 2021). On appeal, Hicks contested his convictions on the racketeering conspiracy charge (Count I) and on the two counts charging him with stealing money belonging to the United States (Counts VII and VIII). *Id.* at 815–16.

Hicks argued that, with respect to the RICO charge, "the jury at his trial could well have confused the conspiracy with the 'enterprise' or treated the pattern of other crimes (such as stealing or possessing drugs and guns) as if it were the enterprise or the conspiracy, or perhaps misunderstood how predicate offenses must be related to form a pattern." *Id.* at 816. The Seventh Circuit rejected this argument, primarily because Hicks had waived or forfeited many of the specific challenges he could have, but did not, raise in the district court. *Id.*

As to Counts VII and VIII, Hicks argued that jury instructions "were defective because they did not tell the jurors that conviction depended on finding beyond a reasonable doubt that he knew that the money he stole belonged to the United States or one of its agencies, such as the

8

FBI." *Id.* Although Hicks had waived the issue in the district court by approving the jury instructions, the Seventh Circuit reached the question because it "potentially arises in every" prosecution under 18 U.S.C. § 641. *Id.* at 816–17. The court then reiterated what this court had said in denying Hicks's motion for judgment of acquittal: under Section 641, "knowledge about who owns the money is not essential to conviction … ." *Id.* at 817. Put another way, the government need not prove "knowledge of the money's ownership." *Id.* (citing *Smith*, 489 F.2d at 1334).

**VIII.  Motions for Compassionate Release**

In January 2021, while his direct appeal was still pending, Hicks filed the first of several motions for a sentence reduction (known as "compassionate release") under 18 U.S.C. § 3582(c)(1)(A). (R. 405.) Because Hicks's appeal deprived this court of jurisdiction to modify his sentence, Hicks's motion for compassionate release was denied for lack of jurisdiction. (R. 413.)

In September 2022, at the same time that Hicks filed this motion to vacate under Section 2255, Hicks again moved for compassionate release. (R. 420; CVR. 1.) The court considered the merits of Hicks's motion and concluded that Hicks had not established the "extraordinary and compelling" reasons that would warrant a sentence reduction under Section 3582(c)(1)(A)(i). (R. 436 at 3 (citing *United States* v. *Vaughn*, 62 F.4th 1071, 1071–72 (7th Cir. 2023).)

**IX.  Federal Habeas Under Section 2255**

On the same day that Hicks filed his second motion for compassionate release, he also filed this motion (CVR. 2) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(a). As noted, Hicks's motion argues that he is entitled to relief under Section 2255 because of ineffective assistance of counsel. Hicks presents seven grounds for concluding that his trial

9

counsel's performance was so objectively unreasonable that, but for his poor performance, the outcome of the trial would have been different.

## LEGAL STANDARD

Through 28 U.S.C. § 2255(a), a person convicted of a federal crime may move to vacate their sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" "Relief under this statute is an 'extraordinary remedy,'" which is therefore available in only "limited circumstances." *Coleman* v. *United States*, 79 F.4th 822, 826 (7th Cir. 2023) (quoting *Almonacid* v. *United States*, 476 F.3d 518, 521 (7th Cir. 2007)). Where the movant "alleges facts that, if proven, would entitle him to relief[,]" the court must grant him an evidentiary hearing. *Kafo* v. *United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (quoting *Bruce* v. *United States*, 256 F.3d 592, 597 (7th Cir. 2001)). Conversely, where the movant's allegations are conclusional, vague, or "'palpably incredible,' rather than 'detailed and specific[,]'" a hearing is unnecessary. *Bruce*, 256 F.3d at 597 (quoting *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962)). The court reviews the evidence and draws all reasonable inferences therefrom in a light most favorable to the government. *See Carnine* v. *United States*, 974 F.2d 924, 928 (7th Cir. 1992).

A Section 2255 motion may not reconsider "[i]ssues that were raised on direct appeal … absent changed circumstances." *Varela* v. *United States*, 481 F.3d 932, 935–36 (7th Cir. 2007) (citing *Olmstead* v. *United States*, 55 F.3d 316, 319 (7th Cir. 1995)). Likewise, an issue that could have been raised on direct appeal, but was not, cannot then be raised via collateral attack unless the 2255 movant can show (1) "cause" for failing to raise the issue on direct appeal and

10

(2) "prejudice" as a result of the alleged error. *United States* v. *Frady*, 456 U.S. 152, 166–68 (1982).

## ANALYSIS

Hicks seeks relief based on alleged ineffective assistance of counsel. Such a claim may be brought under Section 2255 regardless of whether the movant "could have raised the claim on direct appeal." *Massaro* v. *United States*, 538 U.S. 500, 504 (2003). To succeed on a claim of ineffective assistance of counsel, the movant must show that (1) his "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694 (1984).

In assessing the movant's showing with respect to the first prong, the court is "highly deferential[.]" *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* The court presumes "reasonable judgment" and does not "second guess strategic choices." *Valenzuela* v. *United States*, 261 F.3d 694, 698 (7th Cir. 2001) (quoting *United States* v. *Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)). Nor does the court pick apart counsel's choices, judging their reasonableness in isolation; rather the court considers "the reasonableness of counsel's conduct in the context of the case as a whole[.]" *Id.* (quoting *United States* v. *Lindsay*, 157 F.3d 532, 535 (7th Cir. 1998)).

As for the second prong, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Not only must the movant make that

11

showing, but he must also demonstrate that the proceedings were "fundamentally unfair or unreliable." *Valenzuela*, 261 F.3d at 699 (quoting *Williams* v. *Washington*, 59 F.3d 673, 682 (7th Cir. 1995)).

Liberally construing Hicks's motion, the court discerns seven distinct grounds that might (theoretically) sustain his claim of ineffective assistance of counsel: (I) inadequate pre-trial investigation; (II) failure to challenge the sufficiency of the RICO charge; (III) failure to move to suppress evidence; (IV) inadequate cross-examination of government witnesses; (V) failure to challenge the sufficiency of the evidence on Counts II, III, and VI; (VI) failure to call defense witnesses; and (VII) inadequate closing argument. (CVR. 2 at 6–14.) While mindful that the sum of these alleged deficiencies might demonstrate ineffective assistance, the court nonetheless addresses them in turn.

## I. Pre-Trial Investigation

To demonstrate an objectively unreasonable pre-trial investigation, Hicks directs the court's attention to several "glaring events" that made "obvious … trial counsel's lack of investigation and preparedness for trial": counsel (1) did not use any of the findings of retired FBI agent Stephen Carter, who was hired to a conduct pre-trial investigation, and failed to utilize (2) information Carter provided that would have undermined claims made by government witnesses and (3) information regarding potential defense witnesses. (CVR. 2 at 7–8.) In fact, Hicks goes further, saying that counsel had in his possession "possible exculpatory information and failed to examine or utilize it." (*Id.* at 8.) Furthermore, "counsel chose to proceed blindly and (more or less) chose to 'fly by the seat of his pants.'" (*Id.*)

The government argues that Hicks has waived asserting ineffective assistance of counsel on this ground by failing to develop the argument: "Hicks does not specify what information

12

should have been used or how the information would have made a difference in the outcome of the case." (CVR. 9 at 7.)

The government is correct. In his reply brief (CVR. 15), Hicks does not address the government's waiver argument. He has therefore waived argument on waiver. *See Bradley* v. *Vill. of Univ. Park, Ill.*, 59 F.4th 887, 897 (7th Cir. 2023) (party waives argument "by failing to respond in a reply brief to a new argument raised" by opposing party). Nor does Hicks develop his "pre-trial investigation" argument by either identifying specific information that should have been used by counsel or discussing how such information would have affected the outcome of the case. Hicks does not explain what "exculpatory" information counsel allegedly had in his possession. Because Hicks has made, both in his motion and in his reply brief, only a broad assertion of inadequate pre-trial investigation (CVR. 2 at 7–8; CVR. 15 at 16–17), the court agrees with the government that Hicks has waived the argument by failing to develop it. *See Puffer* v. *Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments are waived "if they are underdeveloped, conclusory, or unsupported by law.") (citing *United States* v. *Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("Perfunctory and undeveloped arguments … are waived … ."); *United States* v. *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

Even if the argument were not waived, Hicks's allegations are vague and conclusional. In other words, they lack the detail and specificity necessary to warrant an evidentiary hearing. *See Machibroda*, 368 U.S. at 495; *Bruce*, 256 F.3d at 597.

**II.  Sufficiency of the RICO Charge**

Hicks contends that, with respect to the RICO charge, his counsel's performance fell below an objectively reasonable standard when counsel (1) did not move to dismiss the

13

indictment as to that charge, (2) approved the jury instructions relating to that charge, (3) did not request any additional instructions on that charge, and (4) did not object to the prosecutor's closing argument regarding the proof necessary to sustain a conviction on that charge. (CVR. 2 at 9.) The government argues, and the court again agrees, that Hicks has waived this contention by failing to develop it: "Hicks does not explain what was wrong with the RICO conspiracy charge, which jury instructions given by the court were improper, what jury instructions his trial counsel should have proffered, what was wrong with the government's closing argument, or how the government's trial evidence was insufficient to sustain the RICO conspiracy." (CVR. 9 at 9.)

It is difficult to even call Hicks's presentation of this issue in his motion an "argument." Hicks's motion simply quotes the Seventh Circuit opinion affirming his conviction and sentence on direct appeal:

> We cannot look inside jurors' minds to see whether they were confused. All a court of appeals can examine is objective events, such as the terms of the indictment, the language of the jury instructions, and the arguments of counsel. Yet Hicks did not contest any of these matters in the district court. He did not move to dismiss the indictment, so we must assume that it states a technically sufficient RICO charge. (And, to our eyes, it does.) Hicks did not object to any of the jury instructions; to the contrary, his counsel approved them. Nor did Hicks request any additional instructions in order to help the jurors keep the different concepts straight. Finally, Hicks did not object to the prosecutor's closing arguments about what needed to be proved, and how, in the prosecutor's view, that had been accomplished. This combination of waiver (approving the jury instructions) and forfeiture (not objecting to the indictment or argument; not asking for more disambiguation from the judge) leaves Hicks in a hopeless position on appeal.

*Hicks*, 15 F.4th at 816; (CVR. 2 at 9). Of course, Hicks does not quote what follows: "We do not see anything approaching plain error with respect to the issues that were forfeited—and those that were waived cannot be called error at all. That's all we need to say about the RICO conviction." *Id.* (citations omitted). If the Court of Appeals could not discern "anything approaching plain error" with respect to the indictment, the jury instructions, or the closing

14

arguments, it is difficult to see how this court could find counsel's performance to be constitutionally deficient. Regardless, it is simply not enough for Hicks to quote this passage from the Seventh Circuit's opinion and then assert that "No more need be said." (CVR. 2 at 10; *see also* CVR. 15 at 8.) In short, the argument is not merely underdeveloped; it is not developed at all. The argument is therefore waived. *See Puffer*, 675 F.3d at 718.

Even if it were not waived, the argument is entirely conclusional, rendering unnecessary an evidentiary hearing. *See Machibroda*, 368 U.S. at 495; *Bruce*, 256 F.3d at 597.

**III. Suppression of Evidence**

Hicks argues that counsel should have moved to suppress the government's "undercover recordings." (CVR. 2 at 12.) According to Hicks, "there were indications that there were no signatures on [the] search warrants." (*Id.*)

To be sure, an unsigned warrant presents a problem of constitutional dimension. *See generally United States* v. *Taylor*, 63 F.4th 637 (7th Cir. 2023). But Hicks's motion does not identify any specific warrants that may have suffered from constitutional infirmities. "When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress," the movant must "prove [that] the motion [would have been] meritorious." *United States* v. *Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). Hicks attempts to cure this deficiency in his reply brief by pointing to eight unsigned applications for warrants and three unsigned affidavits in support of applications for warrants. (CVR. 15 at 17–18.) Hicks also argues that one of the warrants authorizing the search of his residence in Chicago was invalid because it was obtained via fraudulent affidavit. (*Id.* at 19.) Setting aside the fact that none of this evidence indicates that, as Hicks's motion asserts, an actual *warrant* went unsigned, Hicks's (unpersuasive) attempt to articulate a suppression argument in his reply brief comes too late and is therefore waived. *See*

15

*White* v. *United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[A]rguments raised for the first time in … reply brief are waived because they leave no chance to respond."). *See also Love* v. *Vanihel*, 73 F.4th 439, 449–50 (7th Cir. 2023) (failure to articulate argument in habeas petition could not be cured by later development of the argument).

IV. **Cross-Examination of Government Witnesses**

Hicks also impugns his counsel's handling of government witnesses, arguing that there were "opportunities" counsel "missed" during cross-examinations. (CVR. 2 at 10.) He focuses on counsel's examinations of two witnesses: co-defendant Lawrence W. Knitter and FBI agent Mark Burbridge.

    A. **Knitter Examination**

Hicks argues that his counsel's cross-examination of co-defendant Knitter was objectively unreasonable in that counsel failed to cross-examine Knitter (1) "about the location of any incidents to which he testified or when they occurred or if he was shown to any" of the victims, (2) "about his testimony that he carried a sawed-off shotgun during robberies[,]" and (3) "regarding the violation of his plea agreement when he committed domestic violence against his wife after his release from MCC-Chicago." (CVR. 2 at 11.) In short, counsel failed "to impeach" Knitter. (*Id.*) Nor did counsel object when Knitter stated "that he could identify cocaine by smelling the substance and determine its weight by holding it in his hand[,]" and that he could "smell the substance contained in a bag." (*Id.*) Counsel "had to know" of case law that would sustain those objections. (*Id.* (citing *United States* v. *Carnell*, 972 F.3d 932 (7th Cir. 2020).)

As the government correctly points out (CVR. 9 at 19), when a movant claims ineffective assistance of counsel arising from an alleged failure to adequately cross-examine a witness, the movant must explain what the witness's "responses to further cross-examination might have

16

revealed" and "how those responses might have affected the result." *United States* v. *Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995). Hicks has made no effort at such an explanation, either in his motion or reply brief. Rather, Hicks merely asserts that Knitter could have been impeached and that counsel could have objected to Knitter's claims that he could identify cocaine by smell and that he could "determine its weight by holding it in his hand." (CVR. 2 at 11.) Without explanation as to how counsel's failure to do these things might have affected the outcome, with respect to either the case as a whole or a specific count, Hicks has not asserted any grounds for prejudice, and without some showing of prejudice, his ineffective-assistance claim cannot succeed. *See Strickland*, 466 U.S. at 694.

### B. Burbridge Examination

Hicks also contends that counsel should have sought to impeach FBI agent Mark Burbridge, who testified for the government about conversations he recorded. (CVR. 2 at 11.) Specifically, Hicks suggests that Burbridge's testimony at co-defendant Larry Hargrove's trial could have been used to cast doubt on "the veracity of the contents on the recordings." (*Id.*) Although this argument, like most of Hicks's arguments, is so "skeletal" that it is very likely waived, *see Dunkel*, 927 F.2d at 956, the court will assume, *arguendo*, that Hicks's counsel could have impeached Burbridge using his prior testimony at the Hargrove trial. But even affording Hicks that assumption, the court cannot find that Hicks's counsel was ineffective in choosing not to impeach Burbridge. Hicks has not placed Burbridge's testimony on the recordings in any kind of context that might demonstrate that the failure to impeach was objectively unreasonable. Nor has Hicks made *any* argument regarding how the failure to impeach Burbridge prejudiced Hicks. In other words, Hicks has again waived the argument, this time on *Strickland*'s second prong. *See Puffer*, 675 F.3d at 718.

17

V.       **Challenges to Counts II, III, and VI**

Counts II and III of the indictment involved conspiracy to possess or attempted possession of 500 grams or more of detectable cocaine or marijuana. (R. 232 at 6, 10.) Hicks argues that counsel was ineffective in failing to "require the government to produce proof in the form of lab reports, pictures[,] or samples of the drugs received[,] or any proof that there were any drugs at all." (CVR. 2 at 13.) Furthermore, because there "were no drugs[,]" Hicks argues, there could be "no use of a firearm in furtherance of a drug crime." (*Id.*) In short, Hicks suggests that if counsel had challenged the sufficiency of the evidence on Counts II and III, the government could not have proved its case with respect to both those counts and Count VI.

The government correctly rejoins that Hicks's contention lacks merit because none of the charges required proof that Hicks or his co-defendants possessed illegal drugs. (CVR. 9 at 22–23.) Counts II and III of the indictment charged Hicks with conspiracy and attempt (*see* R. 232 at 6–10), and neither charge required proof that Hicks actually possessed controlled substances. *See United States* v. *Shabani*, 513 U.S. 10, 13–14, 16 (1994) ("The prohibition against criminal conspiracy … does not punish mere thought; the criminal agreement itself is the *actus reus*… ."); *United States* v. *Garcia*, 89 F.3d 362, 366 (7th Cir. 1996) (rejecting defendant's argument that real controlled substances must be involved when government charges attempted possession). As a result, even if Hicks's counsel had "require[d] the government to produce proof … that there were any drugs" (CVR. 2 at 13), counsel's effort would have had no effect on whether the government met its burden with respect to these counts. Counsel's failure to require such proof was therefore neither objectively unreasonable nor a source of prejudice to Hicks's defense.

For the same reasons, Hicks's challenge to the sufficiency of the evidence on Count VI has no merit. Count VI charged Hicks with the possession of a firearm in furtherance of the

18

conspiracy set forth in Count II, in violation of 18 U.S.C. § 924(c)(1)(A). (R. 232 at 15.) The government's burden on this charge was to prove possession of a *firearm* and the drug conspiracy, not possession of drugs. In short, Hicks's counsel did not render ineffective assistance by failing to press the government on the issue of actual drug possession.

### VI. Defense Witnesses

Hicks claims that he suggested that counsel call Chicago Police Department Sergeants Robert Thorne and Abraham Taylor, who were "vetted by the investigator," to testify to Hicks's character, but counsel "refused to engage those members of law enforcement." (CVR. 2 at 10–12.) But Hicks makes no argument that the uncalled witnesses' testimony would have affected the outcome of his case. A movant under Section 2255 must "offer some basis for [the court] to believe that a witness was available to testify … and that there was a reasonable probability that [the] witness's testimony would have made a difference in the outcome of the trial." *George* v. *Smith*, 586 F.3d 479, 486 (7th Cir. 2009). Because Hicks makes no argument to this effect, he has not demonstrated prejudice, and without a showing of prejudice, Hicks cannot succeed in his ineffective assistance claim on this ground. *See Strickland*, 466 U.S. at 694.

### VII. Closing Argument

Hicks argues that his counsel's closing argument was objectively unreasonable in that it (1) was too brief, (2) was written "just before" counsel was called to give it, (3) did not mention RICO, and (4) was "filled" with conclusional assertions that lacked specificity or substance. (CVR. 2 at 13–14.) The government once again correctly argues that Hicks has waived any claim of ineffective assistance based on his counsel's closing argument because he has failed to identify what arguments counsel *should* have made at closing and how those unmade arguments would have changed the outcome of the case. (CVR. 9 at 25.) Because Hicks has not specified

what counsel should have done differently and has not constructed any argument with respect to prejudice, he has failed to develop adequately his argument and has therefore waived this basis for his ineffective assistance of counsel claim. *See Puffer*, 675 F.3d at 718.

Furthermore, even if Hicks had not waived this issue, he would need to meet an exceptionally high bar to succeed in claiming ineffective assistance of counsel based on counsel's closing argument. Hicks has not come close. As the Supreme Court has said:

> [C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should 'sharpen and clarify the issues for resolution by the trier of fact,' but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential—and doubly deferential when it is conducted through the lens of federal habeas.

*Yarborough* v. *Gentry*, 540 U.S. 1, 5–6 (2003). The only change that Hicks even obliquely suggests is that counsel should have addressed the RICO charge in his closing. (CVR. 2 at 13–14.) But when "counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough*, 540 U.S. at 8. Hicks has made no attempt whatsoever to overcome this presumption, and his ineffective assistance of counsel claim therefore fails.

## **CONCLUSION AND ORDER**

For the reasons discussed above, Hicks's motion for relief under Section 2255 (CVR. 2) is denied.

Date: December 5, 2023

_____
U.S. District Judge Joan H. Lefkow